STATE, HENDERSON ET AL., PROSECUTORS, v. MAYOR, &c., OF JERSEY CITY.

1. Where a land owner is assessed for local improvements, without notice of the meeting of the commissioners to lay the assessment, and afterward appears before an appellate tribunal having power to return the assessment for the correction of errors, and fails to object to such want of notice, he will be held to have waived his objection.

2. Lands drained by the construction of a sewer may be assessed for the benefit conferred, although such lands are not on the line of the sewer, or of the street through which the sewer is built.

On *certiorari* to remove assessments for sewer in Grand street, from the Newark plank road to a point west of Vreeland street, in Jersey City.

Argued at June Term, 1879, before Justices SCUDDER, KNAPP and REED.

For the prosecutors, *W. Brinkerhoff.*

For the defendant, *A. McDermott* and *L. Abbett.*

The opinion of the court was delivered by

KNAPP, J.   The assessment under review is for the cost of constructing a sewer in Grand street, extending from Communipaw avenue to a point ninety feet west of Vreeland street, in Jersey City.

The initial proceedings in this improvement were taken September 12th, 1871.   The work was ordered by the board of public works, contracted for and completed.

On the 4th of November, 1872, the report of an assessment was filed by the commissioners of assessment, and was by the board of public works referred back to the commissioners for revision and correction.

On July 21st, 1873, a new report was presented by the commissioners, assessing the cost of the work upon the lands drained by the sewer, apportioned according to the area of the several lots; and on the written objection of the prosecutors and others to the assessment, mainly for the reason that the commissioners had departed from the former unvarying usage of laying the cost on the frontage, it was referred back, and the commissioners again reported to the board.   This action brought the proceedings to a stand, and they there remained until, by a resolution of the board of works, passed Novem-

ber 27th, 1877, the previous assessments, and all proceedings relating thereto, were vacated.

On December 6th, 1877, a like resolution was passed by the board of finance and taxation, and one adopted referring the matter back to the commissioners of assessment to examine, assess and report anew.

On January 4th, 1878, they filed in the office of the clerk of the board of works, as the result of their last effort to accommodate the dissatisfied, the map and report now before us.

Pursuant to notice given, sufficient in substance and form to apprise all parties interested, the board of works met on February 4th, 1879, to consider objections against the confirmation of the new report.

Several parties appeared as objectors, the prosecutors amongst the number, and presented in writing their various objections to a confirmation.

This report, with all the objections against it, was referred to the committee on streets and sewers for examination. The committee, after twenty days' deliberation, and having considered *seriatim* the eight objections presented by the prosecutors, as well as those of others complaining, thought them all unfounded, and advised the confirmation of the assessment, which was done by resolution of March 12th, 1878.

Eighteen of the reasons assigned by the prosecutors are directed against the assessment proceedings which were set aside by the action of the two boards mentioned.

Of these one may be noticed, because it questions the power of the city to construct such a work.

The charter authorizes the building of sewers by the city. This was a grant of power which does not fail because no legitimate mode of special assessment is therein provided. This the legislature may at any time supply.

The second section of the act of March 7th, 1877, in relation to assessments in cities, makes provision for vacating assessments such as were set aside. Under it, such action could be taken either by the board of works or the board of finance and taxation in Jersey City. They both acted.

It relates to assessments for any improvement, except the laying of sidewalks, and authorizes a re-assessment in the same manner "as if none had been made."

The act of March 31st, 1871, to re-organize the local government of Jersey City, provides for the appointment of commissioners of assessment, and clothes them with power to make all assessments for public improvements. *Pamph. L.*, 1876, *ch.* 183, entitled "An act respecting assessments in cities," gives an unobjectionable mode of assessments for improvements like that in question, and under that the present assessment was laid.

The report of the commissioners, if true in fact, shows a compliance with every legal requisite to a good and valid assessment. Under one of the reasons, testimony was taken to show that the benefit resulting to the prosecutors' property was not equal to the assessments against it. The prosecutors themselves so thought. The same was the case with the witnesses who had participated in levying the former assessments, and their testimony was consistent with their earlier judgment, against which the prosecutors then protested, but which becomes serviceable to them now.

It is unnecessary to refer to this testimony in detail; it is enough to say that it is insufficient to overcome the disinterested judgment of the commissioners acting under their official oath.

A portion of the property of the prosecutors lies along the line of Grand street, but between two and three hundred feet westerly of the nearest terminal point of the sewer constructed; another portion is upon another street, but nearer the work.

It is said that this cannot legally be embraced within the assessment, for the reason that such assessment is held to be illegal by this court in the case of *State, Kellogg, pros.*, v. *Elizabeth*, 11 *Vroom* 274.

In that case, it is true that the lands which were held to be improperly embraced within the assessment were on the line of another street, but that was not the ground for holding the assessment invalid. It was set aside because the proof showed

that the benefits to those lands attributed to the sewer could only arise upon the construction of laterals not then built through the street upon which the property was located. The assessment was made upon such prospective benefit. In this case the assessment seems to be upon no such objectionable principle. There was as to those lots not immediately fronting on the sewer, in the judgment of the commissioners, an immediate and direct benefit resulting from the surface drainage which this sewer afforded. Such benefit *directly arising* was recognized in the case cited as one for which special assessment might be imposed, and no case that I know of declares a contrary rule. The case of *State, N. J. R. R. & Trans. Co., pros.,* v. *Elizabeth,* 8 *Vroom* 330, shows a like recognition of drainage as a ground of assessment.

Regarding such drainage, then, as an immediate benefit to the lands so drained, there was nothing improper or illegal in embracing them within the assessment and burthening them to the extent of those benefits. The commissioners made a wide discrimination between the lands immediately fronting upon the sewer and the lands not so situate, in favor of the latter; and, in the absence of satisfactory proof to the contrary, the proper inference is that the assessment was laid solely on account of such benefits as are conferred.

From what is shown in the case, it fairly appears as matter of fact that the land of the prosecutors not immediately fronting on the sewer has the benefit of drainage, and I think there is not proof sufficient, on the part of the prosecutors, to overcome the judgment of the commissioners that the assessment made by them upon those lands is within the value of the benefits directly resulting to them. No assessment probably has ever been or ever will be laid, against which witnesses, intelligent and conscientious, may not be brought, who will differ with the authority appointed to judge and decide, both as to the fact and amount of benefits conferred.

The only other ground of objection to the assessments necessary to be considered is that the prosecutors had no notice of the hearing before the commissioners of assessments.

This has been held a sufficient ground to vitiate an assessment; and it was ruled that notice to the land owner of a hearing before an appellate tribunal empowered to review and correct such assessment did not excuse the want of the other notice. *State, Freeholders of Hudson, pros., v. Road Commissioners,* 12 *Vroom* 83, and cases cited.

The act under which the assessment in question was made makes no provision for notifying land owners of the assessors' meeting, and the report in this case fails to show that notice of any kind was given them of the meeting.

Whether or not they knew of such meeting, or whether they attended at the hearing before the commissioners or not, does not appear in the case; but it is shown that when the board of works sat to hear the objections of land owners to the assessment and against confirming the report of the commissioners, the prosecutors appeared and presented a series of objections in writing against confirming the assessment. This was at a time when the board of works could for any reason have referred the whole matter back to the commissioners for the removal of any cause of grievance. The prosecutors made no complaint, then, of any such want of notice; it was not embraced or hinted at in their schedule of complaints, but the board was allowed to proceed to the consideration of those presented by them, in deciding on the legality and correctness of the commissioners' action.

It is reasonable to presume that a complaint of this kind, if the ground for it existed or if the prosecutors desired to avail themselves of it, would have found a place amongst the objections made. Their failure to present it when it could have been remedied by so trifling an expense to the city, is ground for holding them to have waived their objection, and they ought not now to be heard upon it. Situated as these prosecutors are, their injury in this respect seems to me to be merely theoretical, and the objection founded upon it unsubstantial and technical. Upon such grounds, assessments for public works which have been constructed and which must be paid for, and in the burthens of which specially benefited

property should bear its just proportion, ought not to be overthrown. Only practical and substantial injury or injustice should work such result.

The assessments are affirmed.